PABLO CRUZ, ETC., Plaintiff and Appellee, *v.* PABLO CARRASQUILLO, Defendant and Appellant.

No. 8491. Argued January 15, 1943.—Decided March 1, 1943.

*Faustino R. Aponte* and *Arturo Aponte* for appellant. *Zoilo Dueño . González* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action of filiation decided by the district court declaring that plaintiff Pablo Cruz is the natural son of defendant Pablo Carrasquillo.

Carrasquillo appealed and in his brief assigns the commission of two errors, by the lower court, to wit: "in sustaining the complaint based on a different theory from that of the pleadings," and "in declaring plaintiff to be the acknowledged natural son of defendant on the strength of the mere existence of a document which was signed in the Municipal Court of Yabucoa," violating §125 of the Civil Code.

██ The complaint was filed by the minor Pablo Cruz, represented by his natural mother with *patria potestas* over the same, Margarita Cruz. In it it was alleged that defendant Pablo Carrasquillo and Margarita Cruz, both being single and there being no impediment to their marriage, lived in concubinage, and that as a result of such relations, they had a child, the plaintiff, who was born on April 17, 1938. Furthermore, that defendant has treated plaintiff as his son since his birth, both in public and in private, taking care of his necessities and supporting him.

In his answer defendant denied that he had had relations of any kind whatsoever with Margarita Cruz, or had acknowledged the plaintiff to be his son or took care of him in any way whatsoever.

The case was tried. The mother having been called upon to testify, declared substantially that she had been born in a ward of Yabucoa, and that she came to town in order to work in Mario Dávila's hotel, where she served the guests. One of these, the defendant, "was my suitor, and besides . . . was my husband . . . that is, what I mean to say is, that he was my husband and I had a child by him . . . he made love to me . . . with good intentions, he offered me marriage, that he was single . . . that he promised me to be mine all his life."

She worked at a hotel for about six months. She went to the country and came back to the town being employed at the house of Digno Rincón. "Then Pablo Carrasquillo continued to pay attention to me, and since I was fond of him, I followed him . . . he invited me to . . . take a ride in a car one night . . . I said yes, willingly . . . he took me to the beach at Humacao," where they had sexual intercourse, which was repeated, "and then came the time when I became pregnant . . . when I noticed I was pregnant I called it to his attention . . . and he told me that what I could do was to look for a room for which he would pay." She found a room in the house of Marta Prado. Carrasquillo furnished it for her, and went there day and night. She went to the hospital to have her child. Angela Burgos assisted her and Carrasquillo paid her a dollar and a half for her services.

Carrasquillo "always provided for the child . . . but as he grew up, he became reluctant to do so," he would give her a dollar and a half a week, "after two months he only gave me a dollar, and then I decided to take him before the municipal court . . . and he promised to sign for a dollar fifty, to give it to me weekly without excuses of any kind."

The weekly allowance is given to her now by Carrasquillo's sister because Carrasquillo is not in town. Cross-examined repeatedly as to whether she had ever gone out or had sexual intercourse with policeman Ojeda or with other men whose names were given to her, she denied it absolutely.

Marta Prado testified that she rented a room to Margarita Cruz, who lived in it. "And Pablo Carrasquillo, I realized it one day because of the day on which it happened, I do not know if he stayed or left, I know that he went in there . . . one night I heard her calling him . . . asking him to get up."

Angela Burgos midwife, testified that she had assisted Margarita in the hospital. " . . . On the day after I registered the child I came to him in order to have him sign . . . Mr. Guilo Carrasquillo, and he refused to sign and gave me a dollar and a half."

The birth certificate was then admitted in evidence without objection and later the judgment in the case of abandonment of children, which reads as follows, was also admitted.

"In the session of this court held this day, December 15, 1936, this case was called for hearing in accordance with its previous setting. Attorney Rafael Dávila Ortiz appeared for the accused and announced that the latter and the complainant had made an agreement by virtue of which they would ask for the dismissal of the case, and to that effect a motion for settlement was filed . . .

"The complaint in this case charges the accused Pablo Carrasquillo with the supposed violation of Act No. 35 of 1931. In it it is substantially alleged that since the beginning of November 1936, and in Yabucoa, the said accused Pablo Carrasquillo illegally and without lawful excuse, has ceased to give the complainant an adequate allowance for the feeding, clothing, and medical expenses for her son Pablo Roberto Carrasquillo in spite of the demands made upon him by the complainant.

"The law which has been cited, which amends §263 of the Penal Code, reads as follows: (the section is transcribed).

"The settlement to which we have herein before referred, and which is sworn to by the accused and the complainant, reads literally as follows:

" 'Now come the complainant Margarita Cruz and the accused Pablo Carrasquillo and they respectfully state, allege and pray: That in the instant case they have made a settlement by virtue of which the accused promises to pay complainant an allowance of $1.50 a week for the maintenance of minor Pablo Roberto Carrasquillo; that the accused will pay said sum to the complainant without any excuse of any sort every week and in cash; that the complainant agrees, and thus makes it known, and prays that the Honorable Court order the dismissal of the present case, since she is not interested in having it continue. Wherefore, both parties expressly ask the court that in accordance with §445 of the Code of Criminal Procedure in force, it order the dismissal of the complaint in the instant case, after the payment of costs. Yabucoa, Puerto Rico, December 15, 1936. (Signed) Margarita Cruz, complainant. Pablo Carrasquillo, accused.'

"*        *        *        *        *        *        *

"Interpreting not only the letter but also the spirit of the law to which we have referred in the preceding paragraph, and obeying the highest spirit of justice, we think that the settlement referred to is one which falls within the provisions of §446 of the Code of Criminal Procedure.

"Exercising, then, the discretion which the law confers upon this Court in cases of this nature, the dismissal of this proceeding is ordered, and the accused is set free, after the payment of costs."

With the introduction of these documents the presentation of evidence by the plaintiff was concluded. Defendant's evidence consisted of his own testimony and of that of Gertrudis Carrasquillo, Erasmo Rivera, Cecilio Berríos, and Rafael Dávila.

Gertrudis Carrasquillo, defendant's sister, testified that while the defendant is away from Yabucoa she pays the weekly allowance of $1.50, in accordance with the judgment, with which she has been acquainted since it was rendered. Lately, the child himself goes to her store to get it.

Erasmo Rivera testified that he went out riding in the same car, he with a woman and defendant with Margarita Cruz. He was invited for a third ride which took place, but then the defendant did not accompany Margarita, but a

policeman by the name of Ojeda accompanied her, a fact of which he informed Carrasquillo the next day. That was around 1935.

Cecilio Berríos is a driver of public cars who testified that he drove Policeman Andrés Acevedo, one night in 1935 or 1936, up to the house of Margarita Cruz and the policeman told him to knock on the door. He did so and she came out and "she said, 'what's up?' I told her, 'he is coming here,' that Andrés was coming here, the policeman, and she left the door open, and then he went up there and closed the door, and then he told me 'go' and then I left."

Defendant Pablo Carrasquillo admitted that he had sexual intercourse with Margarita Cruz on several occasions, but he denied that he paid for the room in which she lived or that he furnished it for her. He stated that he was never in her room. He stated that he gave her no allowance whatsoever. He would give her stockings and candy at times. The first weekly allowance which he paid her was after the judgment. He signed the agreement on the advice of counsel.

The last witness who testified was Attorney Rafael Dávila Ortiz who represented Carrasquillo in the case of abandonment of minors. Referring to Carrasquillo and to that case, he stated as follows:

"He was in my office to consult me about that matter, and since it had to do with a complaint for abandonment of minors, I knowing the ideology of Judge Ramos of the Municipal Court of Yabucoa, where the complaint had been filed, and also knowing the ideology of the district judge, Arjona Siaca, in these cases of abandonment of minors, I thought it was convenient for my client to settle that matter, and I counseled him to that effect, then I drew up this motion which appears copied here in the judgment and which I took to the court and had my client, as well as Margarita Cruz, the complainant, sign under oath."

And in answer to the question—

"Did Pablo Carrasquillo, at any moment, in spite of your friendship for him tell you that he was the father of this boy?"

He answered—

"No, he always denied it and he said that he had witnesses for his defense and I thought that in spite of the witnesses and everything, he might be convicted, that it was quite probable that he would be, and due to that fact I advised him to enter into a settlement binding himself to pay a certain sum, but without admitting at any moment that the child was his son."

The trial court concluded that the evidence to which we have referred was not sufficient to prove the concubinage or the possession of the state of natural son, which were the grounds expressly alleged in the complaint for asking the acknowledgment, but it rendered judgment in favor of the plaintiff for the following reasons:

"There arises from the evidence however, a special circumstance which should not pass unnoticed. We refer to the responsibility which defendant voluntarily assumed when he signed the stipulation which served as a basis for the judgment of the Municipal Court of Yabucoa, and which, when offered in evidence by plaintiff, was not objected to but on the contrary defendant made it his own evidence.

"Said document possesses all the characteristics of the authentic evidence to which paragraph 4 of §125 of the Civil Code, *supra,* refers. And, although signed by defendant to the end of (1) *binding himself to pay a weekly allowance* to Margarita Cruz for the maintenance of plaintiff, (2) *on the condition that* the complaint filed against him *be dismissed,* it has a greater scope, that of implying the acknowledgment of fatherhood charged in said complaint.

"Would defendant have signed this stipulation if he had not acknowledged himself to be the father of Margarita Cruz's son? For who but a father will assume the obligation of supporting he who claims to be his son?

"No matter how much defendant may try to impeach the evidentiary force of that stipulation, either by his own testimony, or through the testimony of Attorney R. Dávila Ortiz, it would not be possible. The complaint informed him clearly of the charge against him: 'not paying an adequate sum to the complainant for the support, clothing, and medicines for his son Pablo Roberto Carrasquillo'; and being informed of such a charge, he signed and swore to the stipulation or settlement by virtue of which he bound

himself to pay a weekly allowance to the complainant for the support of minor Pablo Roberto Carrasquillo, and it was prayed that the court dismiss the complaint.

"The stipulation was made on the basis of the provisions contained in §§ 445 and 446 of the Code of Criminal Procedure. And no doubt in order that the settlement sought should be more solemn the complainant did not limit herself to acknowledging that she had been compensated for the harm caused her by the accused, but together with him she signed the said stipulation in all its parts.

"In order that the dismissal of the case in accordance with the provisions of the cited sections may be made, it is an indispensable condition that the accused shall assume responsibility for the acts which are charged against him in the complaint, that is to say, he must admit his guilt of the crime. And if that crime is the abandonment of minors, the admission carries with it the paternity, that is to say, the fact that he is the father who has failed in his compliance with a duty which nature and the law impose upon him to support his child.

"With this testimony under our consideration, we have no alternative but to declare that defendant Pablo Carrasquillo is the natural father of his son who was born as a result of his relations with Margarita Cruz.

"Should such a document not be in existence and in spite of our conclusion that within the doctrine of the Civil Law in force and the decisions which interpret it, we could not, on the basis of the evidence introduced, adjudge the paternity on the ground of concubinage or on the ground of plaintiff being in the continual possession of the state of natural son of the defendant father, however, that same evidence leaves no doubt that from the relations had by defendant with plaintiff's mother there was born a son, and that that son is the plaintiff in this case. With the same evidence to support a criminal complaint for the abandonment of minors, defendant would be found guilty, since the case has stronger evidence than those of *People* v. *Rohena*, 52 P.R.R. 301, *People* v. *López*, 54 P.R.R. 279, and recently that of *People* v. *De Jesús*, 57 P.R.R. 694."

And it was that attitude assumed by the trial court which prompted appellant to assign the errors which he has assigned in support of his appeal.

It has been held repeatedly that an appeal is not against the reasons given in support of the judgment but against

the judgment itself, so that if the judgment can be upheld on the strength of the allegations and the proof, it must be affirmed although the reasons given by the judge for rendering it are erroneous. And such is the situation, in our judgment, in the case at bar.

We are entirely in agreement with the trial judge in that the concubinage was not proved, but we are not in agreement that the possession of state was not proved.

The love affair between defendant and Margarita Cruz was evident and lasted for a considerable period of time. As a consequence thereof the plaintiff was born.

That defendant acknowledged the minor to be his son appears not only from the testimony of the mother, but also from that of the midwife who assisted her at the delivery.

It is true that defendant, when the midwife suggested to him that he register his son in the Civil Registry refused to give his consent thereto, but in spite of that fact he paid for her services and implicitly acknowledged him before her as his son. His acts of acknowledgment continued when he provided the mother with the minimum sum which he gave her for the support of the minor and these culminated in the settlement which served as a basis for the judgment in the case of abandonment and in the acceptance of the same not only by him but also by a member of his family, his sister Gertrudis.

The judgment in the case of abandonment of minors with which we are dealing should not be considered as the lower court considered it, a separate document which by itself serves as sufficient grounds for acknowledgment, but should be considered together with the rest of the evidence which is the way in which it was introduced at the trial, and thus considered shows the commission of acts by the father in harmony with those committed before the birth and after the birth of the child, which shows that the latter was in con-

tinual possession of his state of natural son of defendant, which gave him the right to be acknowledged.

It does not matter that defendant tried to evade his responsibility. The truth was so strong that even without intending to do so he acted in such a way that his acts cannot be interpreted in any way but as an acknowledgment. Much to his sorrow it seems, his sister as well as he by their acts acknowledged that the minor was the natural son of defendant, and once this happens, a person may not evade the responsibility assumed, because the law provides that, "the father is obliged to recognize the natural child," among other cases which are listed, "where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father justified by acts of the same father or of his family." Section 125, paragraph 2, of the Civil Code, (1930 ed.).

The appeal is overruled and the judgment appealed from affirmed.